UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| HOUSTON CASUALTY COMPANY, | ) Case No. |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) **COMPLAINT FOR DECLARATORY** |
| v. | ) **RELIEF** |
| | ) |
| ANGELS ON EARTH PPEC, LLC and JOYCE DURHAM, as Personal Representative of the Estate of TARIONN JACKSON-HANNER, | ) |
| | ) |
| Defendants. | ) |

Houston Casualty Company ("HC") files this Complaint for Declaratory Relief seeking a judicial determination of its right to rescind the policy of insurance it issued to Angels on Earth PPEC, LLC ("Angels"), along with a direction from the Court to return the premium paid for the Policy to Angel's broker of record that will finalize the rescission process. Upon confirmation of the right of rescission, HC also requests a confirming declaration that it may then withdraw from the defense currently being provided to Angels in the underlying lawsuit captioned *Joyce Durham v. Angels on Earth PPEC, Inc.,* Case No. 05-2023-CA-012018 ("Lawsuit"), and that the Plaintiff in the underlying lawsuit, Joyce Durham, as Personal Representative of the Estate of Tarionn Jackson-Hanner is entitled to no amount under the HC Policy issued to Angels given the completion of the rescission process.

HC is ***not*** seeking reimbursement from Angels or any of its owners, directors, or officers for amounts expended by HC in providing a defense, although it reserves the right to amend this Complaint for Declaratory Relief to address any and all potential rights, remedies, and forms of relief it may be legally or equitable entitled to assert.

**NATURE OF THE ACTION AND QUESTIONS PRESENTED FOR RESOLUTION**

1. HC brings this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, asking the Court to resolve the following issues of rights and duties of HC and Angels, including the following questions:

1

- Given the undisputed, and at times admitted, factual misrepresentations and omissions in documents provided by Angels to HC in seeking the issuance of Policy Number H22MSS21271-01 ("Policy," a true and correct copy of which is attached as Exhibit "A"), including the contents of the Application of the Policy and the recently completed Examination under Oath of Angels Owner and President Aleida Cabrera ("EUO," with true and correct excerpts of the EUO attached as Exhibit "B"), including the recent admission that she did not sign the Applications bearing her name, is HC entitled to rescind the Policy?
- If HC is entitled to rescind the Policy, is HC authorized to return the premium paid for the Policy to Angels' broker of record?
- If HC is entitled to rescind the Policy, is it also entitled to immediately withdraw from the defense currently being provided to Angels, which defense was provided pursuant to HC's reserved rights (March 23, 2023 correspondence, a true and correct copy of which is attached as "Exhibit "C")?
- If HC is entitled to rescind the Policy, with the underlying Plaintiff made a party to this action and bound by the Court's potential determination of rescission, is HC then entitled to confirm that it is not obligated to provide any amount to the underlying Plaintiff in response to the Lawsuit?

## PARTIES, JURISDICTION, AND VENUE

2. HC is, and at all times relevant was, a corporation duly formed and existing under the laws of the State of Texas, with a principal place of business in Houston, Texas.

3. Angels was a corporation duly formed and existing under the laws of the State of Florida, with a principal place of business in Orlando, Florida. It filed Articles of Dissolution on February 19, 2024.

4. The owners, directors, and officers of Angels, including Aleida Cabrera (Owner and President), reside within Orange County, Florida, and are within the jurisdiction of this Court.

5. Joyce Durham, as Personal Representative of the Estate of Tarionn Jackson-Hanner, on information and belief, is also a resident of the State of Florida residing within the jurisdiction of this Court.

6. The Lawsuit for which Angels sought protection arose from the alleged acts and omissions occurring in Brevard County, with the Lawsuit also filed in that County, within the jurisdiction of this Court.

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332. There is complete diversity of citizenship between HC and Angels, with the amount in controversy in an amount exceeding $75,000, exclusive of interest and costs.

8. Venue is proper in this Court because Angels has its principal place of business within the jurisdiction of this Court, its owners and officers reside within this jurisdiction, and the Lawsuit for which obligations under the Policy are being sought by Angels is filed within this jurisdiction.

## FIRST CAUSE OF ACTION - DECLARATORY RELIEF
## (POLICY RESCISSION)

9. HC incorporates herein Paragraphs 1-8 above.

10. Angels was incorporated on August 16, 2018. All of its corporate filings obtained from the Florida Secretary of State, as truly and correctly downloaded from the Secretary of State's website, are attached hereto as Exhibit D. The original listed directors and officers were Aleida Cabrera (President), Julia Erbiti (Vice-President), and Maria Delgado (Vice-President), with those individuals retaining their roles through all dates relevant to the issues raised in this Complaint.

11. The only change to Angels' corporate filings, showing any change in approved and existing directors or officers, was the July 8, 2021 addition of Juan Delgado as corporate Secretary.

12. Carlos Cabrera was never designated or added as director or officer of Angels according to any document filed with the Florida Secretary of State, and HC remains unaware

of any declaration adopted by Angels' Board of Directors naming Carlos Cabrera an officers as required by 607.08401 .

13. On September 23, 2022, a Miscellaneous Medical Professional Liability and General Liability Insurance Application was purportedly completed and signed by Angels' Owner and President Aleida Cabrera (Exhibit "A", pp. 127 to 141). This was a new risk to Houston Casualty Company; this was not a renewal of a prior policy issued by this insurance company.

14. The Application contains the following affirmative representations required to be made by a corporate officer:

> CERTIFICATION AND SIGNATURE
>
> The Applicant has read the foregoing and understands that completion of this application does not bind the Underwriter or the Broker to provide coverage. It |s agreed, however, that this application is complete and correct to the best of the Applicant's knowledge and belief, and that all particulars which may have a bearing upon acceptability as a Professional Liability and General Liability Insurance risk have been revealed.
>
> It is understood that this application shall form the basis of the contract should the Underwriter approve coverage and should the Applicant be satisfied with the Underwriter's quotation. It is further agreed that, if the time between submission of this application and the requested date for coverage to be effective, the Applicant becomes aware of any information which would change the answers furnished in response to any question of this application, such information shall be revealed immediately in writing to the Underwriter.
>
> This application shall be deemed attached hand form a part of the Policy should coverage be bound.
>
> Must be signed by an officer of the company.

15. As to the representations made on behalf of Angels as set forth in Paragraph 14, such factual representations regarding Certification and Signature were, and are, material to HC's underwriters in deciding to accept a risk, including the decision whether to issue the Policy. It is an underwriting requirement that the insured's duly authorized director or officer affirmatively confirm (a) that all particulars relating to the risk presented by Angels were disclosed, which could not have occurred if not reviewed and signed in the required manner, (b) that the Insured understood the Application would serve as the basis for issuance of the

Policy, and (c) the Application was complete and correct to the best of the Applicant's knowledge and belief. The limiting requirement on authorized signators ensures that the insured's representations are both accurate and binding on the proposed insured. HC would not have issued the Policy if it had known the representations set forth in Paragraph 14 were false, incomplete, or misleading.

16. Ms. Cabrera's sworn testimony confirms that the representations attributed to Angels in Paragraph 14 were false, incomplete, or misleading as the Application was not reviewed or signed by Ms. Cabrera, was not signed by an official corporate officer of Angels, and was reviewed by a director or officer to confirm the accuracy of the representations.

17. The Application contains the following affirmative representatives to be made by a corporate officer:

> The Applicant hereby acknowledges that he/she/it is aware that the limit of liability of liability shall be reduced, and may be completely exhausted, by claim expenses and, in such event, the insurer shall not be liable for claim expenses or any judgment or settlement that exceed the limit of liability.
>
> I HEREBY DECLARE that, after inquiry, the above statements and particulars are true and I have not suppressed or misstated any material fact, and that I agree that this application shall be the basis of the contract with the Underwriters.

18. As to the representations made on behalf of Angels as set forth in Paragraph 17, such factual representations were, and are, material to HC's underwriters in deciding to accept a risk, including the decision whether to issue the Policy, because it is an underwriting requirement that the Insured's duly authorized director or officer affirmatively confirm (a) that they understand that the limits of the Policy would be reduced by defense fees and costs, and (b) that all particulars relating to the risk presented by Angels were disclosed, with no suppression or misstatement of any material fact, and (c) the Application would be the basis for issuance of the Policy. HC would not have issued the Policy if it had known the representations set forth in Paragraph 17 were false, incomplete, or misleading.

19. Ms. Cabrera's sworn testimony confirms that the representations attributed to Angels in Paragraph 17 were false, incomplete or misleading were false, incomplete or misleading as the Application was not reviewed or signed by Ms. Cabrera, was not signed by an official corporate officer of Angels, and was reviewed by a director or officer to confirm the accuracy of the representations.

20. The Application contained the following question:

| [8]h. Has the Applicant or any of the Individuals listed in question 8.a. and 8.b.: <br> (1) ever been the subject of a disciplinary proceeding, investigation or reprimand by a governmental or administrative agency, hospital or professional association | ☐ Yes ◉ No |
|---|---|

21. The representation by Angels in response to question 8.h. was materially false and misleading in two respects, with Ms. Cabera having personal knowledge of the following facts prior to the date of the execution of the Application:

    a. Ms. Cabrera confirmed in her EUO that the Florida Attorney General had commenced an investigation into potential Medicare fraud/billing irregularities, which followed an earlier investigatory effort by the Florida Agency for Health Care Administration. Angels had even retained legal counsel. Ms. Cabrera admitted in her EUO that this representation in the Application was inaccurate. (EUO, pp. 52, 85)

    b. Ms. Cabrera also confirmed in her EUO that Angels had been previously investigated by the Florida Agency for Health Care Administration for alleged harm or injury to a child [name redacted for privacy reasons], which led to a review of incident reports and the seeking the names of other clients of Angels in furtherance of the administrative investigation. (EUO, pp. 29-30)

Thus, the affirmative representations in response to Question 8.h were false.

22. As to the representations made on behalf of Angels as set forth in Paragraph 20, such factual representations were, and are, material to HC's underwriters in deciding to accept a risk, including the decision whether to issue the Policy, because the existence of a criminal investigation into actual or alleged fraud by an Insured relates to the desirability of the risk, and the nature of the Insured's operations. HC would not have issued the Policy if it had known the representations set forth in Paragraph 20 were false, incomplete, or misleading with respect to the Florida Attorney General Investigation.

23. As to the additional representations made on behalf of Angels as set forth in Paragraph 20 relating to the Florida Agency for Health Care Administration's separate investigation into the mother's complaint of harm or injury to her child while in Angel's case, such factual representations were, and are, material to HC's underwriters in deciding to accept a risk, including the decision whether to issue the Policy, because the existence of a client's complaint regarding the care of a child, sufficient enough to trigger a regulatory investigation into actual or alleged misconduct by an Insured, relates to the desirability of the risk, and the potential for a future Claim that would need to be covered by the Policy. HC would not have issued the Policy on the same terms or conditions if it had known the representations set forth in Paragraphs 20 were false, incomplete, or misleading with respect to either of the administrative investigations.

24. In response to the question on the Application regarding Angels' anticipated income for the Policy year, Angels created manuscript documents, submitted with, and incorporated into, the Application stating that income for Angel's various sites would total $10,764,000. Only a few weeks before the Application was signed, however, Ms. Cabrera confirmed in her EUO that Florida had stopped making all payments for services to Angels, requiring them to use their personal savings to meet business obligations (EUO p. 72), a fact not disclosed in the Application, which by definition includes any other document submitted to HC's underwriters. As a result, at the time the Application was completed, Angels could not

have stated this income figure, at least not without limitation or disclosure that its funding sources had been entirely stopped by regulators pending the completion of their investigation.

25. In response to the question on the Application regarding Angel's anticipated income for the Policy year, Angels also did not disclose that Mr. Cabrera was paying parents amounts to remain as clients, with care paid for by Medicare, as documented in part as a result of the criminal investigations of Carlos Cabrera relating to claims of bribery involving parent Tamyra Burnham, among others (State of Florida, Office of the Attorney General, Emergency Ex Parte Motion for Injunctive Relief), confirming that income amounts were being manipulated or modified based on conduct contrary to federal and state law.

26. As to the affirmative representations in the Application submitted on behalf of Angels regarding its current and anticipated income for the Policy year, such factual representations were, and are, material to HC's underwriters in deciding to accept a risk, including the decision whether to issue the Policy, because they relate to the ability of an Insured to operate its business with appropriate financial resources, including needed staffing, lease/site payment obligations, equipment and supply obligations, among other considerations relevant to the ability to operate a child care center for minors with physical and developmental challenges. HC would not have issued the Policy if it had known the representations regarding income and recoverability of Medicare payments set forth in Paragraphs 24 and 25 were false, incomplete, or misleading, as acknowledged by Ms. Cabrera.

27. The Application contained the following question:

> 11. LOSS HISTORY
>
> If the answer to any question in 11.a. through 11.b. below is "YES", please complete a Claim Supplemental Form for each claim, allegation or incident, and submit a currently valued loss runs for the past five (5) years.

| a. In the past five (5) years, has any claim been made, or legal action been brought, against you, any of your current or former officers, directors, owners, partners or employees, or any other person or entity proposed for this Insurance. | ☐ Yes ◉ No |
|---|---|

| | |
|---|---|
| b. Are you or any other person or entity proposed for this insurance aware of any fact(s), incident(s), act(s), event(s), circumstance(s) or occurrence(s) that may result in any professional liability or general liability claim (s) being made against any person or entity proposed for this insurance? | ☐ Yes ◉ No |

28. Ms. Cabrera confirmed in her examination that the answers set forth to these questions were not accurate in that:

    a. At least one mother had made a complaint of a failure to provide proper care, and/or harm or injury to her child, triggering a regulatory investigation, with such facts or circumstances (even if false or fraudulent by the mother) creating a potential for a Claim that was not disclosed in the Application, even though the event was significant enough to remain within Ms. Cabrera's memory and recollection during her EUO. (EUO pp. 79-80)

    b. The Policy also contains a MEDEFENSE PLUS Endorsement, which extended coverage, subject to its terms and conditions, to "Regulatory Proceeding Expenses" incurred in response to a Regulatory Proceeding, including a Billing Errors Proceeding and/or an actual or suspected violation of any federal, state or local anti-kickback or self-referral laws, which might include the client bribery/kickback allegations known to Carlos Cabrera as set forth in various criminal filings by the State of Florida, including the Florida Attorney General's Emergency Ex Parte Motion for Injunctive Relief.

29. As to the affirmative representations by Angels in response to Questions 11 a. and b., regarding the absence of knowledge of any claims, and the absence of knowledge of any circumstances that might give rise to a future Claim under the Policy, such factual representations were, and are, material to HC's underwriters in deciding to accept a risk, including the decision whether to issue the Policy, because they relate to the ability to risks and

exposures that HC might later be called upon to address, by way of defense and/or indemnity considerations, of which the Insured was aware. HC would not have issued the Policy if it had known the representations the absence of Claims and/or potential future Claims as set forth in Paragraph 27 were false, incomplete, or misleading, as at least partially acknowledged by Ms. Cabrera.

30. Additional material misrepresentations were included in documents and submissions provided on Angels' behalf to HC, which can be detailed in a later, amended Complaint should that become necessary, and for which the right to supplement the grounds and basis for rescission is expressly reserved, including inaccurate representations regarding advertising conducted by the company, the number of drivers and other individuals providing services, and certain record keeping. This takes into account that the term "Application" is defined in the Policy broadly, and includes "all applications, including any attachments thereto, and all other information and materials submitted by or on behalf of any Insured to the Company in connection with the underwriting of this Policy, or any other policy of which this Policy is a direct renewal or replacement. All such applications, attachments, information, and materials are considered attached to and incorporated into this Policy. Exhibit "A," Section III, Definitions, Paragraph D.

31. On March 24, 2023, without advance knowledge of the facts and circumstances set forth above, including the material misrepresentations contained in the Application, correspondence was issued by HC accepting the defense of Angels in response to the Lawsuit, subject to a reservation of rights. Angels accepted the defense under a reservation of rights, and never disputed the following statement of position and reserved rights:

> The following is HC's updated coverage position relative to this matter. Please be advised that the following is subject to change upon receipt of additional information and/or as the matter develops.

***

**APPLICABLE POLICY PROVISIONS/RESERVATION OF RIGHTS**

Without intending to comment on the veracity of Claimant's allegations, we take this opportunity to advise you of our observations concerning coverage for this matter. Please be advised that the following is based upon currently available information and may be subject to change as this matter develops and further information becomes available

\*\*\*

In addition to the foregoing, HC expressly reserves all rights, privileges and coverage defenses under the Policy and applicable law, including, but not limited to, Section VIII.(C) Other Insurance.

\*\*\*

Subject to the foregoing reservation of rights, this will confirm that HC has undertaken to provide a defense to the Insured in connection with this matter. As you are aware, HC has retained Michele Morales, Esq. and the law firm of Cole, Scott & Kissane P.A. to represent the Insured in connection with the allegations by the Claimant.

\*\*\*

Please be advised that the above is based upon the Company's present understanding of this matter. HC specifically reserves the right to afford or deny coverage based upon grounds other than those expressly set forth in this letter and to supplement and/or amend this letter to address additional coverage issues as they may arise, based upon all the provisions, terms, conditions, exclusions, endorsements and definitions found in the Policy as well as any additional facts which may come to the attention of the Company.

Nothing stated herein, nor any further action taken by HC or anyone acting on its behalf, shall be construed as a waiver of any rights, remedies or defenses under the Policy or applicable law. On the contrary, by providing this and any prior or subsequent correspondence to you, engaging in any prior or subsequent discussions with you, or paying or agreeing to pay any amount to or on behalf of you, HC specifically reserves all rights, remedies or defenses belonging to it under the Policy, including the right to deny coverage, withdraw from the defense and recoup amounts paid in the event it is determined that coverage hereunder does not apply. We recognize the rights of the Insured equally are reserved. To that end, we wish to advise you that you have the right to object

to the Company's assumption of the defense of this matter. Kindly advise the undersigned immediately if you do have any objection to the defense arrangements stated herein.

32. With no objection made to the reservation of rights or any other matter set for in the reservation of rights letter, and upon the new and different facts now known to exist, included the admitted misrepresentations set forth in the Application submitted on behalf of Angels, HC also requests that the Court determine that HC may immediately withdraw from the defense being provided to Angels. HC is presently agreeing to waive and release Angels, its owners, directors, and officers from any potential right of reimbursement, although HC reserves the right to later seek such amounts should its right of rescission be contested, forcing HC to incur additional attorneys' fees, costs, and expenses.

33. Upon determination of the facts and circumstances set forth herein, at and following the recently completed EUO of Ms. Cabrera, HC has in no manner acted inconsistently with a planned rescission of the Policy. In addition, HC has acted with due course in bringing this action upon the newly discovered and understood facts and circumstances supporting the rescission considerations set forth herein, materially changing the view of coverage and the validity of the Policy by HC.

34. As HC is a surplus lines carrier, it is not covered by Florida insurance statutes regarding rescission considerations. As a common law rescission issue, the foregoing facts and circumstances confirm, even if negligently or innocently made (See, e.g., *Amaro v. Certain Underwriters at Lloyd's London* (SDFl., 2019) 18-23503/U.S. Dist. LEXIS 128754; *Perlman v. Prudential Ins. Co.*, 686 So. 2d 1378 (Fla. 3d DCA 1997) (where the court references common law rescission based on negligent misrepresentation as a course of action that could have been pursued by the plaintiff); *Fla. Orthopedics, Inc. v. American Ins.*, 896 So. 2d 1 (Fla. 3d DCA 2004); *Langley v. Irons Land & Dev. Co.* (Fl. 1927) 94 Fla. 1010, 1017; *Held v. Trafford Realty Co.*, 414 So. 2d 631, 632 (Fla. 5th DCA 1982)), or upon a higher standard of culpability, that the actions and omissions set forth above were carried out with requisite degree of culpability so as to meet the standards for rescission and the relief sought herein.

**PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, HC prays for relief as follows:

1. A judicial confirmation of its right to rescind the Policy, with the rescission process completed upon the then-authorized return of the Policy premium to Appalachian Underwriters, Inc., as Angels' broker of record; and

2. A judicial determination that upon a judicial confirmation of the right to rescind the Policy, and once the return of premium has been completed to the broker, HC may then immediately withdraw from the defense of the Lawsuit;

3. A judicial determination that neither Joyce Durham nor any other person or entity will, upon confirmation of the right of rescission, be entitled to any amount under the Policy or from HC; and

4. Such other and further relief as the Court may deem just and proper, although at this time HC is not seeking monetary relief, reimbursement, or other affirmative payments to HC for amounts expended to date in its defense.

Dated: June 21, 2024

                                              Respectfully Submitted,

                                              **CLAUSEN MILLER P.C.**

                                  By:    */s/ Nicholas W. Travis*
                                                  NICHOLAS W. TRAVIS, ESQ.
                                                  FBN: 116594
                                                  4830 West Kennedy Blvd. #600
                                                  Tampa, Florida 33609
                                                  Phone: (813) 519-1028
                                                  ntravis@clausen.com
                                                  amarrero@clausen.com

                                                  *Attorneys for Plaintiff, Houston Casualty Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 21, 2024, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court via CM/ECF.

                                          By:    /s/ *Nicholas W. Travis*
                                                        NICHOLAS W. TRAVIS, ESQ.
                                                        FBN: 116594